Milligan, J.,
delivered the opinion of the court:
This is an action brought against the United- States, under the act of March the 12th, 1863, to recover the proceeds of one hundred and ninety-six and one-half bales of cotton, which it is alleged were seized by the military authorities in October, 1863, in the parish of Concordia, Louisiana, and by them shipped *461 to Yicksburg, and there turned over to an agent of the Treasury Department, and by him reshipped to St. Louis, where the cotton was sold, and the proceeds paid into the Treasury of the United States.
The claimants in interest are children, and devisees of Frederick Stanton, deceased, who was a citizen of Natchez, Mississippi, where the nominal claimant, his widow, and children continue to reside.
The action stands in the name of Huldah L. Stanton, tutrix of her children, Elizabeth H., Frederick, and Newton H., all of whom, at the date of the seizure, were minors, and the beneficial owners of the cotton in question. Since the seizure, the first two have arrived at full age, and Elizabeth H. has intermarried with one John Eawle.
Under this state of facts the plaintiff, by her attorney, moves the court to amend her petition, by inserting the names of Frederick Stanton and Elizabeth H. Eawle, as claimants in their own right, and her own name, Huldah L. Stanton, as guardian of her minor son, Newton H., instead of tutrix.
The record discloses the fact, that Frederick Stanton, at his death, left five children surviving him, two of whom were of full age, and the remaining three minors. In 1869, at the February term of the Probate Court of Adams County, in Mississippi, Mrs. Stanton was regularly appointed and qualified as guardian of her three minor children, who are the real claimants in this action. Subsequently the whole estate of Frederick Stanton, deceased, which was very large, and consisted chiefly of lands and negroes in the States of Mississippi and Louisiana, was, under appropriate proceedings in the local courts of Mississippi and Louisiana, brought to sale, for the purpose of partition among the several parties in interest. In furtherance of this object, and so far as the record discloses the facts, for this special purpose, Mrs. Huldah L. Stanton, on presentation of her letters of guardianship granted in Mississippi, was recognized by the courts of Louisiana as tutrix of her three minor children ; and as such admitted as a defendant in the proceedings there, to sell the lands and slaves of Frederick Stanton, deceased. The sale was ordered, and she became the purchaser for the use and benefit of her wards. The cotton under consideration was raised on this plantation, since the sale, and by the labor of the hands purchased with it. The other children of *462 Frederick Stanton, deceased, wbo are not parties to this action, have no interest whatever in it, and are therefore very properly not joined in this suit.
But is the action well brought in the name of Huldah L. Stanton as tutrix of the beneficial claimants, and ought the amendments asked for to be allowed 1 It is very clear that whatever the rights and powfers of Mrs. Stanton as tutrix under the laws of Louisiana were, that they all ceased at the maturity of her wards. Elizabeth EL Bawle and Frederick Stanton are now of full age, and capable of suing in their own right, and we have no hesitation, under the peculiar facts of this case, in allowing this amendment.
In respect to the second amendment sought, it is not so clear whether the action ought to proceed in the name of the guardian of the domicile, or the tutrix appointed under the laws of Louisiana. There is some conflict of authority on this point, especially in the English and American cases. Judge Story, however, lays down the general doctrine in the following language: “ There is no question whatever, according to the doctrine of the common law, the rights of foreign guardians are not admitted over immovable property, situate in other countries. Those rights are deemed to be strictly territorial; and are not recognized as having any influence upon such property in other countries whose systems of jurisprudence embrace different regulations, and require different duties and arrangements. No one has ever supposed that a guardian appointed in any one State of this Union had any right to receive the profits, or to assume the possession, of the real estate of his ward in any other State, without having received a due appointment from the State where it is situate. The case falls within the well known principle, that rights to real property can be acquired, changed, and.lost only according to the law rei sitaeP (Conflict of Laws, section 504.)
Now, while it must be admitted that the subject matter of this suit is the “ profits ” of the La Marque plantation in Louis; iana, and that the guardian appointed in Mississippi could not sue in the local courts of Louisiana, without having first received due appointment from the judicial tribunals of that State, for any cause of action growing out of the real estate situate there, or the profits arising therefrom. But this rule is founded on the theory of our jurisprudence that recognizes the *463 States of the Union, for many purposes, as separate and independent sovereignties, each governed by its own code of laws and municipal regulations. This court rests on no such basis. It is national in its character and jurisdiction, and neither the rule or the reason of it applies here. It is alike open to the citizens of every State, who can bring themselves-within the acts of Congress regulating its jurisdiction.
But in the great multitude of cases which are brought into this court, some of them must of necessity be instituted in the name of the personal representative of deceased claimants ; or, as in this case, the name of the guardian, or tutrix of persons not sui juris. In such cases, the general doctrine, that the rights and powers of guardians as well as executors and administrators are limited to the State in which the appointment was made, cannot be applied to this court. We are bound to give effect to the action of the State courts, and hold that the guardian, executor or administrator can sue in this court.
But as in the case in hand, where there is a conflict of right between the guardian appointed in one State and a tutrix in another, who shall prosecute the suit? Both cannot do it, for that might result in great confusion in the distribution of the recovery, as the laws of the several States are not uniform in respect to the distribution of personal estate. The safer rule, and the one more in harmony with principle is, in such a case, to give the preference to the guardian of the domicile of his wards. The claim is personal, and the right of action follows the person, and is to be determined as to the right to maintain the action, and to distribute the proceeds of the recovery, by the law of the domicile of the wards.
From this view of the law, it follows that the amendment in this respect be also allowed, and that this action proceed to final judgment in the name of Elizabeth H. Bawle and Frederick Stanton in their own right, and Huldah L. Stanton, guardian of her minor son, Newton II. Stanton.
But here again we are confronted with another preliminary difficulty. Elizabeth H. Stanton, as we have seén, since the institution of this suit, has intermarried with John Bawle, and now appears to prosecute this suit in her own name. By the general law, the action ought to be revived in the name of her husband. But in this case he has filed a written disclaimer and renunciation, whereby he declines to join his wife in the *464 action, and renounces all interest whatever, whether marital or otherwise in» this suit or the proceeds thereof.
The Eevised Code of Mississippi, (Oh. XL, § 5, article 26,) provides, that: “In addition to the remedies now existing by law, by and against a married woman, the husband and wife may sue jointly, or if the husband will not join her, she may sue alone for the recovery of any of her property or rights, and she may be sued jointly with her husband, on all contracts, or other matters for which her individual property is liable; but if the suit be against husband and wife, no judgment shall be rendered against her, unless the liability of her separate estate be first established.”
Under the broad provisions of this section of the Mississippi statute and the husband’s positive refusal to join in the action, we have no hesitation in holding that the wife may sue alone or jointly with her co-claimants.
These preliminary matters out of the way, we come now to consider the merits of this case; and the essential facts on which it rests, other than those already stated, are found to be substantially as follows:
1. In the spring of 1862, there were about one thousand bales of cotton on the La Marque plantation, the product of the farm and the labor of the hands of the claimants in interest, which were ordered by the rebel military authorities to be burned ; and while this order was being executed, some two hundred and fifty bales, under the direction of the overseer, were hauled out about one and a half miles, and concealed in a canebrake, where it remained until October following, when it was all seized, except that portion that had become damaged, by the military forces of the United States, and shipped to Vicksburg in government vessels, and there turned over to an assistant Treasury agent, and by him reshipped to St. Louis, where it was regularly sold, and the proceeds paid into the Treasury of the United States.
2. A portion of the cotton concealed, from lapse of time, high water and exposure, was damaged, and we find the actual number of bales, which were captured, shipped and sold, was one hundred ninety-six and one-half.
3. The proof of the loyalty of the claimants is not as strong as it doubtlessly would have been had they been of more mature years. But no acts of disloyalty are shown, either in *465 tbe mother or any other member of the family. They are proven to have borne the reputation of Union people, and this reputation is folly sustained by affirmative acts and conduct throughout the war.
On these facts, drawn from a great mass of testimony, we find the claimants entitled to recover for one hundred and ninety-sis and one-half bales of cotton, and direct that judgment be entered in their favor for $51,696*16.